# SALES CONTRACT # 101-S10/2018/UAN/UAB
## October 22, 2018

As per our various discussions, AVAgro LLC is pleased to confirm the sale of UAN 32% as per the following terms and conditions:

1. **Seller :**            UAB AVAgro
                           9-Ojo Forto g.47
                           Kaunas, Lithuania
                           LT-48100
                           Email: business@avagro.org

2. **Buyer:**              390 ORCHARD ROAD, 08-04 PALAIS RENAISSANCE,
                           SINGAPORE 238 871
                           Tel: +7 495 7219020 / Mob: +7 918 994 6265  (WhatsApp)
                           Web: www.dreymoorfert.com

3. **Product:**            Urea-Ammonium Nitrate Solution (UAN 32%)

4. **Quantity:**           25,000 mt +/- 10 pct in Buyer's option with declaration by 1200 hrs CET on October 25, 2018.  27,500 mt as per the Buyer's final declaration.

5. **Quality At Loading:**  Total nitrogen, N %  32,0 min
                            Mass fraction of ammonium nitrogen (N-NH$_3$), %   8 ± 0,8

Sales Contract # **101-S10/2018/UAN/UAB**        - 1 -



| | |
|---|---|
| Mass fraction of nitric nitrogen (N-NO$_3$), % | 8 ± 0,8 |
| Mass fraction of amide nitrogen (N-NO$_3$), % | 16 ± 1,6 |
| Ratio of mass fraction of urea & AN | 0,73 - 0,83 |
| PH | 6,5 - 7,5 |
| Corrosion inhibitor CORDON 99 ppm | 150 - 300 |

6. **Loading Period:** October 26, 2018 – November 26, 2018

   If a vessel doesn't arrive within the original laydays, Buyer will request to extend the laycan and Seller will make best effort to accommodate Buyer's request.

   In case the extension of original laycan is not possible due to berth being occupied by another vessel, Seller will grant a new laycan based on Buyer's request.

7. **Origin:** In Seller's Option – FSU

8. **Destination:** To be mutually agreed

9. **Load Port:** Klaipeda, Lithuania ( Klasco Terminal)

10. **Terms:** FOB Klaipeda according to INCOTERMS 2010

11. **Price/MT:** EUR 208.80/MT FOB Klaipeda.



| | |
|---|---|
| 12. **Taxes/Dues:** | Any taxes or dues on products related to country of origin and export for Seller's account. |
| 13. **Payment:** | 100% of nominal shipping quantity value shall be paid by the Buyer to the Seller upon receipt of Seller's Proforma invoice and warehouse receipt. |
| | Banking costs at Buyer's bank on Buyer's account. Buyer shall not set off any payment due under this contract against any claims under other contracts. |
| | In case the Buyer refuses to perform its obligations according to this contract, the Buyer commits himself to defray 5% penalty from the value of each MT, agreed to purchase and unpurchased. In case the Buyer does not pay the penalty in time, the Seller has the right to take of penalty amount from next Buyer payment, or to undertake legal proceedings. |
| 14. **Shipping Documents:** | The following documents will be sent to the Buyer by international courier service with a copy by e-mail within 3 working days after B/L date: <ul><li>3 Invoices</li><li>3/3 original B/L as per Buyer's Instructions;</li><li>Certificate of origin issued by Kaunas Chamber of Commerce, Industry and Crafts;</li><li>Certificate of quantity and quality/analysis</li></ul> B/L instructions must be presented to the Seller latest 72 hours before vessel's laycan commencement. B/L instructions might be presented to the Seller later than 72 hours before vessel's laycan commencement by separate agreement. |
| 15. **Inspections:** | Seller shall, at Seller's expense, engage an internationally |

Case 6:20-mc-00105-EFM   Document 1-1   Filed 03/03/20   Page 4 of 14



recognized independent inspection company to inspect and certify in writing the quantity and quality of the product in accordance with the contractual specification at the load port at the time of loading. No claim shall be presented to or made against Seller unless Buyer shall have promptly given written notice to Seller of any defects in quality and/or quantity and same are noted in the inspector's certificates.

All sampling and analysis shall be made in accordance with applicable International (ISO) or/and European (EN) standards.

In the loading and discharge ports weight and quality of product should be defined only by Independent Surveyors. Independent surveyor will perform vessels loading supervision, quantity will be determined by shore tank measurement.

When weight of product in discharge port differs more than 0,5 % from weight in the B/L, the Buyer has an option to raise a claim against the Seller. Claim to be resolved by negotiations between the Buyer and the Seller.

The finding of such inspection to be final and binding on the both parties. Buyer shall arrange the reasonably sufficient number of inspectors on the berth in order not to slow down the loading operation.

16. **Performing Vessel/Nomination:** Buyer shall nominate performing vessel not later than 10 days prior to the agreed loading period referenced in Paragraph 6.

17. **Loading Rate:** The cargo to be loaded by Buyer free of risk and expense to Seller at the rate up to 1000 MT per hour SHINC subject ship's related equipment is able to support the confirmed loading rate.



| | | |
|---|---|---|
| 18. | **Laytime:** | Laytime starts to count 6 hours after NOR has been given. NOR not to be tendered before commencement of laydays. |
| 19. | **Demurrage/ Despatch:** | As per the Buyer's Charter Party, tba upon performing vessel's nomination. |
| | | In case of demurrage the Buyer has to inform the Seller within 60 days from B/L date and to present all the substantiating documents signed by the Buyer, port's authority, Seller an/or Seller's representative in port, the master; also present already paid vessel owners invoice for vessel demurrage. |
| 20. | **Dead Freight:** | If at Seller's fault vessel is not loaded at full quantity declared by Buyer/Owner the Seller guaranties the settlement of dead freight against presentation of a properly substantiated documents to the rate advised by Buyer upon vessel nomination and corresponding to the relevant clauses of charter party presented by Buyer to Seller. |
| | | Seller will not be responsible for the dead freight if cargo cannot be loaded due to limited capacity of vessel. |
| 21. | **Waiting Period:** | If a vessel is waiting for loading berth because of bad weather conditions (storm, wind stronger than 15 m/s) the Buyer does not charge vessel's demurrage for the first day (24 hours since its arrival + 6 hours notice time) and share with the Seller demurrage for further days in ratio 50:50. The evidence of bad weather conditions is Statement of Facts signed by vessel's master, agents and Seller's representative and the certificate of hydrometeorogical observatory about weather conditions. |



| | |
|---|---|
| 22. **Claims/Damages:** | Neither Seller nor Buyer shall be liable to the other for any special, indirect incidental or consequential damages resulting from any breach of 'its obligations hereunder. Seller shall not be liable in any event, whether for failure or delay in making delivery or for breach of warranty or otherwise, in an amount exceeding the sums actually paid by Buyer to Seller for any Product with respect to which any breach for any reason is claimed. No claim may be asserted by Buyer for breach of warranty unless, within 30 days after Buyer has had a reasonable opportunity to inspect the Product or, in any event within 30 days after the product has been loaded, Buyer shall have given written notice of the breach to Seller. No claim way be asserted by Buyer for any other reason unless, within 45 days after the date the Product in respect of which the claim is made has been loaded. Buyer shall have given written notice to Seller. In each case, the notice shall assert the existence of the claim and contain a reasonably detailed statement of the fact on which the claim is based. |
| | Notwithstanding anything contained in such notice, certificate and Bill of Lading, Seller may engage its own inspector to examine the product at load port or delivery port and may contest Buyer's claim. In the event of any claim or dispute Seller reserve the right to request from Buyer's inspector copies of certificates and a portion of collected average sample of the product. |
| 23. **Warranties:** | Buyer represents that it's familiar with the characteristics, qualities and uses of the product and that Buyer is not relying on the Seller's skill or judgment to select or furnish product suitable for any particular purpose. Seller warrants that the product sold hereunder conforms to the |



description in the section 'Typical quality of the product at the time of loading' herein and that Seller has title to the product at the time of delivery thereof. Buyer assumes all risk of use of the product, either alone or in combination with other materials, except as set forth in this paragraph.

ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE EXCLUDED. Seller shall not, in any event, be liable for any special, indirect or consequential damages, for breach of warranty or otherwise, and Buyer's damages may not, in any event, exceed the sums actually paid by Buyer to Seller for any product with respect to which breach for any reason is claimed. Seller guaranties that the Product to be loaded is free from all security interests, liens and other encumbrances.

**24. Title and Risk of Loss:** Title to and risk of loss of Product shall pass from Seller to Buyer at the point where the Product passes the vessel's rail at loading ("Delivery Point").

**25. Force Majeure:** The parties are released from the responsibility for a failure to fulfil completely or partially their obligations under the present Contract if it is a consequence of Force Majeure circumstances, such as:

A) war (declared or undeclared), civil war, rebellions and revolutions, piracy and sabotage;
B) natural calamities: heavy storms, cyclones, earthquakes, sea or river floods, lightning;
C) explosions, fires, machines, production buildings and destruction of any (or all) inner communications.



D) Boycotts, strikes, lock-outs, occupation of production and administration buildings and work stoppage at the enterprise of party, asking to exempt from obligations.

E) legal or illegal government of state actions (excluding the actions based on other contract rules undertaken by the party asking to be exempt from responsibility).

F) other irresistible forces; which are beyond the control of any of the Parties and if such circumstances directly affect the fulfilment of the obligations under the present Contract. In such case the time for fulfilment of the obligations under the present Contract shall be extended for the period during which Force Majeure circumstances last.

If such circumstances last more than 3 months, either party has the right to terminate the Contract and in that case neither of the parties has a right to claim compensation of eventual losses against the other party.

The party which is not able to meet their obligations under the Contract due to the circumstances mentioned in par. 4.1 hereof is obliged immediately to inform the other party of the commencement and termination of the Force Majeure circumstances frustrating the fulfilment of its obligations. Certificates issued respectively by the Chambers of Commerce in the Sellers or the Buyer's countries will be sufficient evidence of such contingencies and their duration.

Force Majeure circumstances do not entitle the Buyer to delay and / or reject payment for product delivered before the commencement of such circumstances.



26. **ISPS:**  Each party acknowledges that it is unaware of the International Ship and Port Facility Security Code and relevant implementing laws and regulations, including the Maritime Transportation and Security Act of 2002, as applicable (collectively "ISPS Rules"). Each party warrants, represents and agrees that such party and its agents, employees, representatives and contractors shall comply with the ISPS Rules in connection with this Contract.

    Without limitation, Seller warrants, represents and agrees that any load port or facility used shall comply with all applicable ISPS Rules.

    Without limitation, Buyer warrants, represents and agrees that any vessel nominated, chartered or used by Buyer in connection with this Contract shall comply with all applicable ISPS Rules.

    Within ten business days of the other party's written request therefore, each party shall provide such written evidence in support of the foregoing warranties, representations and agreements as the other party may reasonably request.

    Each party ("Indemnitor") shall defend, indemnify and hold harmless the other party and its affiliates (collectively, "Indemnitees") against any delays, demurrage, costs expensed (including reasonable attorney's fees), losses, damages, claims, liabilities, fines and penalties incurred by Indemnitees as a result of Indemnitor's breach of the foregoing warranties.

27. **Confidentiality:**  Except as may be agreed to in writing by Buyer, or as may be necessary to perform its obligations herein, Seller shall maintain in confidence all information concerning costs and price to be disclosed in connection with this Contract. Unless disclosure is required by law, Seller shall not disclose such information other than to tits employees with a need to know such information in



connection with performance under this Contract, and such employees shall be advised of the confidential nature of such information. Seller shall take all proper precautions to prevent such information from being acquired by any unauthorized person.

**28. Applicable Law:**   The laws of the State of New York (without reference to the conflict or choice of laws provisions thereof) shall govern this Contract, and the rights and obligations of the Parties hereunder, to the exclusion of any laws of any other jurisdiction, whether inside or outside of the United States of America. Subject to Section 29 hereof, Buyer and Seller agree that all arbitrations, suits, actions or proceedings arising in connection with this Contract shall be brought, arbitrated, tried and/or heard exclusively in the County of New York, State of New York and, except as otherwise provided in this Section 28, each party hereto agrees that it will not bring any arbitration, suit, action or proceeding arising out of or relating to this Contract in any other jurisdiction. The aforementioned choice of venue is intended by the parties to be mandatory and not permissive in nature, thereby precluding the possibility of arbitration or litigation between the parties with respect to or arising out of this Contract in any jurisdiction other than those specified herein. Each party hereby waives any right it may have to assert the doctrine of forum non conveniens or similar doctrine, or to object to venue with respect to any proceeding brought in accordance with this Section 28 and Section 29, and stipulates that tribunals in the County of New York, State of New York, shall have in personam jurisdiction and venue over each of them for the purpose of arbitrating or litigating any dispute, controversy or proceeding arising out of or relating to this Contract.

Sales Contract # **101-S10/2018/UAN/UAB**                                                                                          - 10 -



Buyer and Seller agree that each may effect service on the other party hereto by sending or delivering a copy of the process to the Party to be served at the address and in the manner provided for the giving of notices in Section 33/C, above, and/or in any other manner permitted by law or in equity.

Notwithstanding anything in this Section 28 to the contrary, Buyer and Seller each agree that a final judgment in any arbitration, action or proceeding brought in accordance with Sections 28 and 29, hereof, and arising out of or relating to this Contract, shall be conclusive and may be entered and enforced in any court having jurisdiction and in any manner provided by law or in equity.

29. **Arbitration:**   The parties agree that any controversy or claim arising out of or relating to this Contract, or the breach hereof, shall be settled by final and binding arbitration in accordance with the then current rules and procedures of the American Arbitration Association ("AAA") before a single arbitrator appointed pursuant to the aforementioned AAA rules and procedures. The decision of the arbitrator on any controversy or claim under this Contract shall be final. Either party may call for such arbitration by service of a written notice of its intention to arbitrate containing a statement setting forth the nature of the dispute, the amount involved and the remedy sought.

The parties hereby agree that the location of any arbitration hearings pursuant to this Section 29 shall be at an office of the AAA located in the State of New York, County of New York, as required by Section 28. Until such time as the arbitrator finally closes the hearings, either party shall have the right by notice served on the arbitrator to specify further disputes or differences



under this Contract for hearing and determination.

Awards made pursuant to this Section 29 shall include costs such as a reasonable allowance for attorney's fees, and judgment may be entered upon any award made hereunder in any court having jurisdiction, as provided in Section 28. The awards shall include interest calculated at a rate deemed proper by the arbitrator. The parties hereto shall comply with an order of arbitration by a court having jurisdiction consolidating any arbitration proceeding brought pursuant to this Contract with any other arbitration in the City of New York in which the parties hereto may become involved with third parties arising out of the same facts involved in the arbitration proceeding brought pursuant to this Contract.

| | |
|---|---|
| 30. **Amendment, Waiver, Termination, Time:** | No amendment of this contract shall be valid unless it is in writing and signed by the party against whom enforcement thereof is sought. No waiver of any provision of this contract by either party shall prevent such party from asserting such provisions in the event of a continuing or a subsequent breach by the other party.<br><br>Termination of this contract by either party pursuant to the provisions hereof or pursuant to applicable law shall not relieve the other party of any obligation arising prior to termination or in connection therewith. Neither party may assign its rights or delegate its duties hereunder without the written consent of the other party and any attempt or delegation without such consent shall be ineffective. Time is of the essence as to all of Buyer's obligations herein. |
| 31. **Compliance:** | Both parties shall, and shall cause their affiliates and their respective directors, officers, agents, employees, and |



representatives to: (i) act in accordance with the principles described in the Convention on Combating Bribery or Foreign Public Officials in International Business Transactions, signed in Paris on December 17, 1997 (the "Convention") and the Convention's commentaries (collectively, the "OECD Principles"), and (ii) comply with all applicable laws, treaties, conventions, directives, statutes, ordinances, rules, regulations, orders, writs, judgments, injunctions or decrees of any governmental authority having jurisdiction ("Laws") pertaining to the fulfillment of this Contract, including but not limited to, those related to bribery, corruption, money laundering, operations, safety, and pollution prevention. Both parties agree that neither shall take or omit to take any action if such act or omissions might cause the other or any of its affiliates to be in violation of any applicable Laws.

Without limiting the generality of the foregoing, each party warrants that it has not made, offered, or authorized and will not make, offer, or authorize with respect to the matters which are the subject of this Contract, any payment, gift, promise, or other improper advantage, whether directly or through any other person or entity, to of for the use or benefit of any public official (i.e., any person or entity holding a legislative, administrative, or judicial office, including any other person or entity employed by or acting on behalf of a public agency, a public enterprise, or a public international organization) or any political party or political official or candidate for office, where such payment, gift, promise, or advantage would violate any applicable law

32. **Entire Agreement:**     This is the entire agreement between the parties and supersedes any prior or contemporaneous agreement or representation. No



amendment of this contract shall be valid unless it is in writing and signed by the party against whom enforcement thereof is sought. No waiver of any right of a party shall be implied from said party's conduct, all waivers being required to be written. This Agreement may be signed in counterparts, all such counterparts constituting but one agreement. Facsimile copies and signatures are permitted.

33. **Special Terms and Conditions:**   If any to be specified in corresponding amendments.

The Buyer

The Seller  ( V. Vosylius)