**INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION**
**International Arbitration Tribunal**

**UAB AVAgro** §
§
***Claimant and*** §
***Counterclaim Respondent,*** §
§
**v.** §
§
**Dreymoor Fertilizers Overseas Pte. Ltd.** §
§
***Respondent and*** §
***Counterclaimant.*** §

**Case No. 01-19-0000-3381**

---

**Dreymoor Fertilizers Overseas Pte. Ltd.** §
§
***Claimant,*** §
§
**v.** §
§
**AVAgro LLC** §
§
***Respondent.*** §

---

**FINAL AWARD**

---

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between Dreymoor Fertilizers Overseas Pte. Ltd. and UAB AVAgro and dated October 22, 2018, and having been duly sworn, and having duly heard the proofs and allegations of the parties, do hereby, AWARD, as follows:

## I. INTRODUCTION

1. Claimant and Counterclaim Respondent UAB AVAgro is a Lithuanian fertilizer trading company located at 9-Ojo Forto g. 47, Kaunas, Lithuania LT-48100.

2. UAB AVAgro is 100% owned by Counterclaim Respondent AVAgro LLC, a Kansas limited liability company that is also a fertilizer trader. AVAgro LLC is located at 550 N. 159th Street East, Suite 100A, Wichita, Kansas, USA 67230. AVAgro LLC is 100% owned

**EXHIBIT B**

by Ms. Anna Mikhailova.[1]

3. Respondent and Counterclaimant Dreymoor Fertilizers Overseas Pte. Ltd. ("Dreymoor") is a worldwide fertilizer trading company based in Singapore, located at 390 Orchard Road, 08-04, Palais Renaissance, Singapore 238871.

4. In October 2018, UAB AVAgro won a tender for a cargo of fertilizer in Belarus. Dreymoor agreed to lend the entire purchase price to UAB AVAgro provided that the full amount be repaid, plus financing costs and an additional profit margin, by the end of November 2018. UAB AVAgro has, to date, not repaid Dreymoor the full amount owed. Disputes over the repayment and other issues have arisen between the parties, which they have submitted to arbitration. Dreymoor claims that the full amount owed it under the agreement is due immediately from UAB AVAgro and, due to an agreement of the parties, that AVAgro LLC is jointly liable for the unpaid amount. UAB AVAgro claims that no payment is due because Dreymoor has failed to provide certain documents, which is a condition precedent to repayment. AVAgro LLC asserts there is no agreement between the parties pursuant to which AVAgro LLC would assume UAB AVAgro's payment obligations and therefore, it has no liability to Dreymoor.

## II. FACTUAL BACKGROUND

5. On October 17, 2018, UAB AVAgro won a tender from the Belarusian fertilizer producer OAO Grodno Azot ("Grodno") for Urea-Ammonium Nitrate Solution ("UAN 32%"), a commodity liquid fertilizer product, for delivery to Joint Stock Klaipeda Stevedoring Company ("Klasco") in Klaipeda, Lithuania. UAB AVAgro required financing for this shipment. Dreymoor agreed to provide the financing. On October 22, 2018, the parties entered into an agreement that they called a Sales Contract. Pursuant to the Sales Contract, Dreymoor would provide UAB AVAgro the money to purchase the UAN from Grodno, and then UAB AVAgro would repay Dreymoor, plus Dreymoor's bank interest and a fixed fee of €3 per metric ton.

6. The Sales Contract concerned a quantity of 25,000 metric tons, plus or minus 10%, of UAN 32% (the "Product"). The ultimate quantity of the Product was 27,464.55 metric tons. The purchase price to Grodno was €208.80 per metric ton, thus valuing the Product at €5,742,000. On October 22, 2018, Dreymoor paid to UAB AVAgro €5,742,000 pursuant to the Sales Contract.

7. On November 23, 2018, the parties entered into an amendment to the Sales Contract called Amendment #1, which they backdated to October 26, 2018. In Amendment #1, UAB AVAgro agreed repay Dreymoor by November 26, 2018. It provides that in the event of any delay in payment by UAB AVAgro, Dreymoor was entitled to a late charge penalty of 0.02% of the unpaid amount each day, but not to exceed 10% of the Product's value.[2]

---

1 References in this Award to "AVAgro" refer to both UAB AVAgro and AVAgro LLC.

2 The parties agree that they intended the late charge penalty to be 0.02% per day. The text of Amendment #1 states the penalty is "0,2%". The parties agree that this was a typo.

8. UAB AVAgro alleges that it was unable to sell the Product due to various market and regulatory conditions. On November 26, 2018, Dreymoor issued a buyback invoice pursuant to Amendment #1 for €5,835,625.13, due November 29, 2018. On December 3, Mr. Shimonavich emailed Ms. Mikhailova, thanking her for agreeing to pay Dreymoor by December 5, 2018. Mr. Mikhailova did not contradict Mr. Shimonavich. However, UAB AVAgro did not pay the invoice, or any subsequent invoice issued by Dreymoor.[3]

9. In early December UAB AVAgro paid for other cargoes of fertilizer for delivery in the first quarter of 2019. Dreymoor contends that these funds could have been used by UAB AVAgro to repay Dreymoor instead. At the hearing, Ms. Mikhailova testified:

> As per the buy back agreement, I had an option to pay late with interest. For my other [Q1] commitments, I didn't have this option. So yes, I made payments where I didn't have the option to pay late with interest.

Tr. 121:22-122:3. When asked at the hearing by Dreymoor's counsel whether the amount paid to other sellers for Q1 purchases was similar to the amount UAB AVAgro owed Dreymoor, Mr. Mikhailova responded "Yes." Tr. 126:6. Ms. Mikailova further testified that the Q1 purchases were cargos of fertilizer, and that she had subsequently sold those cargos and used the proceeds for "other business." Tr. 235:9.

10. On December 18, 2018, Ms. Mikhailova met with representatives of Dreymoor in Nashville, Tennessee. The parties do not agree as to whether a binding agreement concerning AVAgro's repayment was arrived at during this meeting. Dreymoor's witness, Mr. Dimitry Shimanovich, the president of Dreymoor America LLC, claims there was a meeting of the minds. Mr. Shimanovich testified that at the meeting the parties agreed that UAB AVAgro would pledge the Product stored in Lithuania to Dreymoor, AVAgro LLC would pledge UAN fertilizer in the United States to Dreymoor, and AVAgro LLC, and Ms. Mikhailova personally, would assume responsibility for repaying Dreymoor. In return, Dreymoor granted AVAgro additional time to repay. Ms. Mikhailova denies that there was any meeting of the minds.

11. On December 19, 2018, Ms. Mikhailova wrote "I defaulted on repaying Dreymoor on time..." On December 19 or 20, 2018 (the date stamp is ambiguous), Ms. Mikhailova wrote to Dreymoor: "As discussed, during my visit to Dreymoor's office yesterday, the responsibility ultimately rests with AVAgro LLC and my personal guarantee." Mr. Suraj Aggarwal of Dreymoor responded "We would be fine to have buy back with LLC instead of UAB."

12. On December 19, 2018, Ms. Mikhailova wrote "As I promised from the beginning that Dreymoor would not lose any money by helping AVAgro UAB to pay for the Grodno product, I will pledge 2,500-3,000 ST (current market value $765,000) of AVAgro

---

3 UAB AVAgro did make payments to Dreymoor, on January 31, 2019, and April 23, 2019, of €60,865.20 and €68,729.10, respectively.

LLC's inventory at Kinder Morgan terminal towards any losses on this transaction plus interest." She also wrote that she would pledge her personal assets via a personal guarantee.

13. On December 20, 2018, Ms. Mikhailova sent to Dreymoor a signed Amendment #2, which provides, *inter alia*, that AVAgro LLC would assume the repayment obligation of AVAgro UAB. On December 21, Ms. Mikhailova sent to Dreymoor a signed Repayment and Pledge Agreement, which provides, *inter alia*, that AVAgro LLC would repay Dreymoor by January 31, 2019, €5,742,000 plus 7% yearly interest.

14. In an exchange of emails on December 22 and 23, 2018, Ms. Mikhailova requested that Dreymoor provide her with a statement to give to Klasco stating that Dreymoor did not own the Product. Dreymoor's Mr. Aggarwal wrote in response that "we did not take any trading or other risks in the deal since it was meant to be a short term financing transaction."

15. Dreymoor did not immediately sign and return to Ms. Mikhailova Amendment #2 or the Repayment and Pledge Agreement. Instead, it sought some changes to the documents. The parties dispute whether these were material changes. On December 29 (or December 30), 2018, Ms. Mikhailova withdrew Amendment #2 and the Repayment and Pledge Agreement. On December 31, 2018, Dreymoor rejected Ms. Mikhailova's withdrawal and sent executed copies of Amendment #2 and the Repayment and Pledge Agreement, dated December 21, 2018. AVAgro argues that Dreymoor improperly backdated these documents. Dreymoor denies this, stating that it signed them on December 21, 2018. The parties agree, however, that the first time that Dreymoor provided the documents signed by Dreymoor to AVAgro was on December 31, 2018.

16. In January 2019, Dreymoor sent multiple communications to Klasco stating that the product was subject to dispute, pledged to Dreymoor, and could not be moved without Dreymoor's consent.

17. In April 2019, UAB AVAgro claims that it arranged to sell 11,000 metric tons of the disputed cargo. Klasco refused to release that portion of the cargo until it received written approval from Dreymoor, pursuant to the November 30, 2018 warehouse receipt. There is nothing in the record that indicates that UAB AVAgro sought such approval from Dreymoor, or that Dreymoor withheld it.

18. On June 26, 2019, Dreymoor informed the Tribunal that it had obtained through the Lithuanian courts an attachment of assets in Lithuania of UAB AVAgro's assets. UAB AVAgro opposed this action, and appealed it to an appellate court. The appellate court has subsequently remanded the proceedings to the trial court. These proceedings are ongoing.

## III. PROCEDURAL HISTORY

19. On January 31, 2019, UAB AVAgro submitted the Notice of Arbitration against Dreymoor seeking declaratory relief determining the rights of the parties under the Sales Contract.

20. On March 8, 2019, Dreymoor submitted its Answer to UAB AVAgro's Notice of Arbitration and Counterclaim against UAB AVAgro, and submitted a Notice of Arbitration and Joinder against AVAgro, LLC, together with a Demand for Security.

21. On March 22, 2019, the ICDR confirmed that Matthew E. Draper was selected to hear the matter as sole arbitrator. The Tribunal was constituted on April 9, 2019.

22. On April 18, 2019, UAB AVAgro and AVAgro LLC submitted their Collective Response to Dreymoor's Answer, Counterclaim, Notice of Arbitration and Joinder and Demand for Security.

23. On May 2, 2019, the Parties held a Preparatory Conference Call with the Tribunal. On May 9, 2019, the Tribunal issued Pre-Hearing Order No. 1 and its Annex, setting forth deadlines for the parties to conduct discovery, submit pre-hearing briefs, among other things, and setting the dates for an evidentiary hearing.

24. On May 22, 2019, Dreymoor submitted its Application for Security pursuant to ICDR Rule 24 against UAB AVAgro and AVAgro LLC. On June 17, 2019, UAB AVAgro and AVAgro LLC submitted their response to Dreymoor's Application for Security.

25. On July 3, 2019, the Tribunal issued Pre-Hearing Order No. 2, granting to UAB AVAgro and AVAgro LLC additional time to produce documents.

26. On July 12, 2019, UAB AVAgro and AVAgro LLC submitted a request to the Tribunal for an interim relief determining whether: (1) Dreymoor misrepresented Article 24(3) of the ICDR Rules and Clauses 28 and 29 of the Sales Contract, in connection with an ex parte interim award that Dreymoor obtained in Lithuanian courts; and (2) Dreymoor's ex parte application to the courts in Lithuania violated the Parties' agreement to arbitrate under the Sales Contract, Clauses 28 and 29. On July 18, 2019, the Tribunal issued Pre-Hearing Order No. 3, denying the request for interim relief.

27. On July 17, 2019, following the exchange of document productions and Redfern schedules among the Parties, Dreymoor and UAB AVAgro and AVAgro LLC, submitted their Motions to Compel further production of documents. Subsequently, on July 18, 2019, Dreymoor sought leave from the Tribunal to file a Motion to Strike UAB AVAgro's and AVAgro LLC's Motion to Compel.

28. On July 19, 2019, Dreymoor submitted a Dispositive Motion for an Interim Award that UAB AVAgro and/or AVAgro LLC defaulted on its/their payment obligations as a matter of law. On July 24, 2019, Dreymoor withdrew its Application for Security against UAB AVAgro, but maintained its Application against AVAgro LLC.

29. On July 31, 2019, UAB AVAgro sought leave from the Tribunal to amend its Request for Relief. On August 1, 2019, the Tribunal issued Pre-Hearing Order No. 4, granting UAB AVAgro's request.

30. On August 8, 2019, the parties submitted their prehearing memorandums. On September 20, 2019, the parties exchanged reply prehearing memorandums.

31. The evidentiary hearing was conducted on October 21 and 22, 2019. Ms. Mikhailova, Mr. Aggarwal, and Mr. Shimanovich testified and were cross examined by counsel.

32. On December 6, 2019, the parties submitted post-hearing briefs and costs submissions.

33. The hearings were declared closed as of December 18, 2019.

## IV. RELIEF SOUGHT BY THE PARTIES

34. UAB AVAgro and AVAgro LLC seek the following relief:

- A declaration that the Sales Contract and Amendment #1 are binding on the parties;
- A declaration that Amendment #2 and the Repayment and Pledge Agreement are not legally binding;
- A declaration of the parties' respective rights under the Sales Contract and Amendment #1;
- A directive that Dreymoor withdraw its January 4, January 15, and May 21, 2019 notifications to Klasco;
- A directive that Dreymoor notify Unicredit Bank AG that it does not have title to the Product;
- A directive that Dreymoor issue a warehouse receipt evidencing that UAB AVAgro has title to the Product;
- Declare that Dreymoor violated the Sales Contract and Amendment #1 by seeking interim measures in Lithuanian Court;
- Order Dreymoor to indemnify UAB AVAgro for all fees and costs associated with this arbitration; and
- Dismiss all of Dreymoor's claims.

35. Dreymoor seeks to enforce the payback provision against both UAB AVAgro and AVAgro LLC. Dreymoor seeks the following damages:

- The buyback price of €5,824,500;
- Financial costs of 2.25% per year on the original "purchase" amount of €5,742,00.;
- Late charge penalty of 0.02% per day (not to exceed 10% of cargo value);
- Consequential damages;
- Prejudgment interest of 9%;
- Post-judgment interest of 9%; and
- Dreymoor's legal costs.

## V. STATEMENT OF REASONS

### a. Dreymoor Is Entitled to the Buyback Price, Plus Financial Costs and a Late Charge Penalty

36. It is not disputed that Dreymoor paid UAB AVAgro pursuant to the Sales Contract. Nor is it disputed that the buyback provision has been triggered, or that UAB AVAgro has failed to pay the buyback price to Dreymoor. Indeed, on December 31, 2018, in the email in which Ms. Mikailova withdrew Amendment #2 and the Repayment and Pledge Agreement, she noted that she was "doing everything in my power to repay Dreymoor as soon as possible," and that "[a]s soon as we make the first sale, Dreymoor will be notified immediately about a payment plan and upcoming loadings." Ex. J-162. This was the last communication from Ms. Mikhailova before the parties engaged arbitration counsel. UAB AVAgro has consistently stated that it "has never denied that it owes Dreymoor money." *See, e.g.*, AVAgro Response to Dreymoor's Application for Security, dated June 17, 2019.

37. UAB AVAgro offers a number of arguments as to why it, nevertheless, is excused from paying Dreymoor. I will address each in turn.

38. First, UAB AVAgro argues that Dreymoor has not provided it with the proper paperwork to enable it to sell the product, that this is a prior breach, and that therefore UAB AVAgro is under no obligation to perform. UAB AVAgro points to the following language in the Buy-Back Option provision of Amendment #1:

> Payment terms for the buy-back option: three business days upon receipt of the following documents:
>
> a) Buyer's invoice: EUR 211.80/mt x unsold tons as of November 26, 2018, plus Financial costs associated with the unsold inventory.
> b) Buyer's warehouse receipt ( as per the original Unicredit Bank AG wording, transferring product's title back to the Seller)
> c) Unicredit Bank AG calculations of financial costs

39. While it is clear that Dreymoor must provide these documents to UAB AVAgro, I do not find that this is a condition precedent to UAB AVAgro's payment obligations. Moreover, the evidence shows that Dreymoor attempted to provide all of these documents to UAB AVAgro at the time. Ms. Mikhailova asked for changes to be made to some of the documents, and some were reissued. However, Ms. Mikhailova never stated in the parties' correspondence in December 2018 that UAB AVAgro's repayment obligation was not due or owing until she received receipt of conforming documents. To the contrary, Ms. Mikhailova repeatedly stated the payment was owing and pas due. Thus, I conclude that UAB AVAgro's payment obligations are not contingent on receipt of the documents listed in the Buy-Back Option provision.

40. To the extent that Dreymoor has provided UAB AVAgro with documents that do not meet the requirements of the Sales Contract, or that would otherwise prevent UAB AVAgro

from selling the product, I find that these were not material breaches of the parties' agreements, and therefore does not excuse UAB AVAgro from performing its contractual obligations.

41. Dreymoor is obligated to perform its duties under the Sales Contract and Amendment #1. It also has a duty of good faith and fair dealing imputed by New York law. Dreymoor has stated that it is willing to offer whatever assurances or permissions are required under the Sales Contract to facilitate UAB AVAgro's sale of the product. It also points out that the one instance where UAB AVAgro claims a sale was thwarted due to a lack of permission from Dreymoor, UAB AVAgro never sought Dreymoor's permission. But there is no evidence that any action by Dreymoor has prevented UAB AVAgro from selling the cargo.

42. AVAgro's second argument as to why it is relieved of its duty to pay Dreymoor is that the Lithuanian litigation has prevented it from selling the product. However, AVAgro's repayment obligations do not turn on the sale of the Product. Moreover, given Ms. Mikhailova's admission that she has chosen (and, presumably, continues to choose) to use revenues from other sales to fund new transactions rather than honor UAB AVAgro's obligation to repay Dreymoor, Dreymoor's efforts to have the Lithuanian courts freeze UAB AVAgro's assets in Lithuania cannot be seen as an attempt to thwart the parties' contractual agreement, but rather to vindicate it. Thus, I do not find that an encumbrance on selling the Product instituted by the Lithuanian courts violates the parties' agreements, or relieves AVAgro of its obligation to pay Dreymoor.

43. Third, AVAgro argues that Clause 22 of the Sales Contract effectively excuses it of its obligations under the Sales Contract that require it to pay Dreymoor anything more than the amount Dreymoor paid it. Clause 22 provides:

> Seller shall not be liable in any event, whether for failure or delay in making delivery or for breach of warranty or otherwise, in an amount exceeding the sums actually paid by Buyer to Seller for any Product with respect to which any breach for any reason is claimed.

44. AVAgro's argument that this means it is not liable for "late payment penalties, interest, or any incidental or consequential damages" is misplaced for several reasons. PHB p. 15. First, these additional costs appear in Amendment 1 which, by its terms, amends the Sales Contract. Thus, the more specific provision in Amendment 1 providing for reimbursement of financial costs and late charge penalty were new obligations that UAB AVAgro freely agreed to add to the Sales Contract. If AVAgro's reading of Clause 22 were to be accepted, it would mean that the new provision would be read out of the Sales Contract. This cannot have been the intent of the parties. Second, the more specifically negotiated financial cost and late charge penalty provisions should predominate over boilerplate language like that in Clause 22.

45. For these reasons, I find that Dreymoor is entitled to the buyback price of €5,824,500.00, plus financial costs, plus the late charge penalty.

**b. Financial Costs**

46. Section 13 of Amendment 1 entitles Dreymoor to its financial costs. Mr. Aggarwal provided uncontradicted testimony that the financing costs to Dreymoor was 2.25% per annum, or 0.00616438% per day. It paid this interest rate on the loan amount (€5,742,000) for 157 days (October 26, 2018 to April 1, 2019). However, UAB AVAgro points to the Buy-Back Option clause as stating that it is only liable for 30 days of financing costs. I agree. The parties must be held to their bargain. Therefore, Dreymoor is entitled to 30 days of financing costs, or €10,618.76.

**c. Late Charge Penalty**

47. Section 13 of Amendment 1 entitles Dreymoor to a late charge penalty of 0.02% per day, not to exceed 10 percent of the value of the Product. The late charge penalty is applied to the buyback price of €5,824,500.00 for a duration of 434 days – i.e., from December 11, 2018 (five days after payment was due) to February 17, 2020, the date of this Award. This amounts to a Late Charge Penalty of €505,566.60. €505,566.60 does not exceed 10% of the value of the cargo.

48. UAB AVAgro made payments to Dreymoor on January 31, 2019 and April 23, 2019 of €60,865.20 and €68,729.10, respectively. Thus, the amount UAB AVAgro owes should be reduced by these amounts. €505,566.60 minus €60,865.20 and €68,729.10 equals €375,972.30.

**d. Interest**

49. The parties' arbitration agreement provides that "The award shall include interest calculated at a rate deemed proper by the arbitrator." Sales Contract ¶ 29. The Tribunal, considers, therefore, that it has discretion to award the interest that it considers appropriate under the circumstances.

50. Dreymoor seeks prejudgment and post-judgment interest. UAB AVAgro opposes. I find that Dreymoor is not entitled to prejudgment interest on top of the Late Charge Penalty. There is no indication from the Sales Contract that any additional interest on top of the Late Charge Penalty was intended.

51. As for post-award interest, I find that a rate of 0.02% per day simple interest is appropriate. This is the Late Charge Penalty rate set forth in Amendment #1. This amounts to 7.3% simple annual interest, which is somewhat less than the New York statutory rate of 9% interest that Dreymoor seeks. This rate was negotiated by the parties, and therefore offers the best approximation of the compensatory rate for Dreymoor.

52. Thus, the total amount owed Dreymoor is the buyback price of €5,824,500.00, plus financial costs of €10,618.76, plus the late charge penalty of €375,972.30. This totals €6,211,091.06.

**e. Dreymoor Did Not Breach the Sales Contract by Seeking Interim Measures in Lithuanian Court**

53. AVAgro argues Dreymoor violated Section 28 (Applicable Law) and Section 29 (Arbitration) of the Sales Contract when it sought an ex parte order for interim measures against UAB AVAgro from the court in Lithuania.

54. Section 28 provides in relevant part:

> Subject to Section 29 hereof, Buyer and Seller agree that all arbitrations, suits, actions or proceedings arising in connection with this Contract shall be brought, arbitrated, tried and/or heard exclusively in the County of New York, State of New York and, except as otherwise provided in this Section 28, each party hereto agrees that it will not bring any arbitration, suit, action or proceeding arising out of or relating to this Contract in any other jurisdiction. The aforementioned choice of venue is intended by the parties to be mandatory and not permissive in nature, thereby precluding the possibility of arbitration or litigation between the parties with respect to or arising out of this Contract in any jurisdiction other that those specified herein.

55. Section 29 provides:

> The parties agree that any controversy or claim arising out of or relating to this Contract, or the breach hereof, shall be settled by final and binding arbitration in accordance with the then current rules and procedures of the American Arbitration Association ("AAA") before a single arbitrator appointed pursuant to the aforementioned AAA rules and procedures.

56. ICDR Rules, Art. 24(3), permits parties to seek interim relief from a court. Article 24(3) provides:

> A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

57. AVAgro argues that Sections 28 and 29 contradict Article 24(3) of the Rules, and that the contractual language trumps. AVAgro's reading is not correct for several reasons. First, Sections 28 and 29 of the Sales Contract do not address provisional or interim measures meant to support the arbitral process. The quoted portion of Article 28 is a classic mandatory choice of forum clause. It means that the parties' disputes must be resolved in accordance with Section 29 to the exclusion of any other forum. But it does not limit the forums to which a party may apply for interim measures.

58. Second, the Tribunal does not read Section 28 as preventing a party from seeking interim relief from a court to attach assets to ensure that, if it prevails in the arbitration, its award will be honored. To find otherwise would undermine the parties' choice to arbitrate, and therefore would need to have been made explicit. Sometimes support from courts is required to ensure that the arbitral process is not rendered meaningless. That is precisely why Article 24(3) of the Rules exists. Indeed, it appears from the translations of Dreymoor's filing with the Lithuanian court that Dreymoor made clear that it was seeking its assistance in order that it might arbitrate the merits of the parties' dispute in these proceedings.

59. Thus, the Tribunal finds that Dreymoor's actions in the Lithuanian court do not violate the Sales Contract, the parties' agreement to arbitrate, or the ICDR Rules.

**f. AVAgro LLC Is Liable**

60. AVAgro LLC can only be made liable for UAB AVAgro's payment obligation if it agreed to take it on. The evidence demonstrates that AVAgro LLC did so agree.

61. Dreymoor contends that there was a meeting of the minds at the meeting on December 18, 2018 in Nashville that is reflected in Amendment #2 and the Repayment and Pledge Agreement that Ms. Mikhailova signed and proffered to Dreymoor on December 21, 2018. AVAgro contends that there was no meeting of the minds, Amendment #2 and the Repayment and Pledge Agreement were rejected by Dreymoor, and that AVAgro subsequently withdrew them.

62. Having reviewed the documentary evidence and observed the testimony of Ms. Mikhailova and Mr. Shimanovich at the hearing, I conclude that there was a meeting of the minds in December 2018. I find that, at a minimum, the parties agreed that Dreymoor would permit UAB AVAgro more time to pay in exchange for the agreement that AVAgro LLC would assume the liability to pay.

63. In the first (or one of the first, the dates are ambiguous) emails either party sent after the December 18, 2018 Nashville meeting, Ms. Mikhailova wrote on December 19, 2018: "As I promised from the beginning that Dreymoor would not lose any money by helping AVAgro UAB to pay for the Grodno product, I will pledge 2,500-3,000 ST (current market value $765,000) of AVAgro LLC's inventory at Kinder Morgan terminal towards any losses on this transaction plus interest."

64. In reply, Mr. Shimanovich responded: "To move forward, please urgently proceed with docs as discussed: ... LLC pledge (including but not limited to inventory in the US)." (emphasis added). Exhibit J-125. Here, Mr. Shimanovich appears to be referring to the discussion on December 18. A few hours later, Ms. Mikhailova wrote in a different email exchange: "As discussed, during my visit to Dreymoor's office yesterday, the responsibility ultimately rests with AVAgro LLC and my personal guarantee ...". Exhibit J-129. Thus, Ms. Mikhailova, too, appears to acknowledge that this was a point agreed during the meeting on December 18. In response, Mr. Aggarwal sent Ms. Mikhailova a draft pledge agreement. *Id.* Later in the same chain Ms. Mikhailova acknowledges "the fact that **now I will guarantee LLC**

**performance under the buyback instead of UAB**." (emphasis in original). On December 20, Ms. Mikhailova sent a signed Amendment #2, which provided that AVAgro LLC was "undertaking UAB AVAgro buy-back responsibilities specified in Amendment 1." Ex. J-138. All of these communications (and others) support the conclusion that the parties had agreed, at the very least, that in exchange for more time to repay Dreymoor, AVAgro LLC had assumed liability for payment.

65. There were other details for the parties to work out, to be sure. Under cross-examination, Mr. Shimanovich testified about differences between the parties concerning whether Dreymoor's permission would be needed to move the product from Klasco. The exchange of emails between the parties from December 18-31, 2018, show other differences between the parties. But there is no indication in the record that there was any question that AVAgro LLC would assume the payback obligations of UAB AVAgro. It was on this basis that Dreymoor was willing to allow UAB AVAgro additional time to pay – which it received.

66. AVAgro LLC argues that an oral agreement violates the New York Statute of Frauds. However, the parties repeatedly described their agreement that AVAgro LLC would assume UAB AVAgro's buyback obligations in writing in emails and Amendment #2. Thus, this argument is not persuasive.

67. For the foregoing reasons, I find that the parties agreed on December 18, 2018 that AVAgro LLC would assume the payback obligation in exchange for more time to make the payment.

68. Because I find that the agreement was made on December 18, 2018, and was reflected in subsequent correspondence, the question of whether Dreymoor rejected Amendment #2 or the implications of Ms. Mikhailova's withdrawal it is irrelevant to the question of AVAgro LLC's liability. To the extent Ms. Mikhailova's withdrawal could be seen as a withdrawal of the December 18 Agreement, this would not be permitted under New York law since Dreymoor had already performed its side of the bargain by granting AVAgro an extension of time.

**g. The Tribunal Has Jurisdiction Over AVAgro LLC**

69. AVAgro LLC argues that, regardless, it is not subject to this Tribunal's jurisdiction. The Tribunal concludes that, to the contrary, AVAgro LLC is subject to the Tribunal's jurisdiction. As an initial matter, I note that at no time has AVAgro LLC questioned this Tribunal's authority to determine its own jurisdiction, as provided by the Rules.

70. Exercising that authority, I find that AVAgro LLC is subject to this Tribunal's jurisdiction for two independent reasons. First, I find that it voluntarily consented to "participate as a party to the arbitration." An email from AVAgro LLC's counsel to the ICDR on April 9, 2019, provides in relevant part:

> AVAgro LLC consents to participate as a party to the arbitration proceedings referenced herein, while reserving its rights to raise any applicable arguments, claims and/or defenses in its Statement of

> Defense to Dreymoor's "Answer, Counterclaim, Notice of Arbitration and Joinder and Demand for Security," when due.

Exhibit J-171 (emphasis added). The Tribunal considers the underlined portion of the above email to constitute consent to this Tribunal's jurisdiction because AVAgro LLC was agreeing to participate "as a party."

71. Second, I find that when the parties agreed that AVAgro LLC would assume UAB AVAgro's obligations under the buy-back option in December 2018, AVAgro LLC was agreeing to arbitrate any disputes arising from that undertaking in accordance with the arbitration agreement set forth in the Sales Contract.

## VI. ATTORNEY'S FEES AND COSTS

The parties' arbitration agreement provides that Awards made pursuant to it "shall include costs such as a reasonable allowance for attorney's fees." Sales Contract ¶ 29. In addition, by agreement of the parties, the Tribunal was asked to consider awarding fees associated with the proceedings in Lithuania. Hearing Tr. 460:2-461:21.

Both parties made submissions for attorney's fees and costs on December 6, 2019. As the prevailing party, Dreymoor is entitled to its reasonable attorneys' fees and costs, including the payments made to the AAA and for the arbitrator's fees, as well as its Lithuanian attorney's fees and costs.

Dreymoor asserts its legal fees and costs (excluding fees paid to the AAA) total $273,998.92. While neither party submitted time sheets in support of its costs applications, I find Dreymoor's fees and costs to be reasonable for the work its counsel performed. In addition, I find the fees reasonable when compared to the fees and costs sought by UAB AVAgro and AVAgro LLC in their costs submission, which amounted to nearly five times the amount sought by Dreymoor.

## VII. AWARD

For the reasons stated above, I award as follows:

Within thirty (30) days from the date of transmittal of this Final Award to the parties, UAB AVAgro and AVAgro LLC hereinafter referred to as the Award Debtors, shall pay to Dreymoor Fertilizers Overseas Pte. Ltd., hereinafter referred to as the Award Creditor the sums of €6,211,091.06 and US$273,998.92.

The administrative fees and expenses of the International Centre for Dispute Resolution (ICDR) totaling US$37,950.00 shall be borne by the Award Debtors, and the compensation and expenses of the arbitrator totaling US$54,007.50 shall be borne by the Award Debtors. Therefore, the Award Debtors shall reimburse the Award Creditor the sum of US$65,762.50, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by the Award Creditor, upon demonstration by the Award Creditor that these incurred costs have been paid in full to the ICDR.

If the sums set forth above are not paid within thirty (30) days of the transmittal of this Final Award, then simple daily interest of 0.02% shall begin to accrue on the unpaid amounts, and continue until paid.

Within seven (7) days of receipt of the sums set forth above from one or both of the Award Debtors, the Award Creditor shall:

1. Notify Joint Stock Klaipeda Stevedoring Company that it is withdrawing its January 4, January 15, and May 21, 2019 notifications;
2. Notify Unicredit Bank AG that it does not have title to the Product; and
3. Issue a warehouse receipt to the Award Debtors evidencing that UAB AVAgro has title to the Product.

This award is in full settlement of all claims and counterclaims submitted to this Arbitration.

I hereby certify that, for the purposes of Article I of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in New York, New York, United States of America.

2/15/2020

Date

Matthew E. Draper
Arbitrator

State of New York )
) SS:
County of Kings )

I, MATTHEW DRAPER do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Final Award.

2/15/2020
Date

Matthew E. Draper, Arbitrator

State of NEW YORK )
) SS:
County of KINGS )

On this 15th day of FEBRUARY, 2020, before me personally came and appeared Matthew E. Draper, to me known and known to me to be the individual described in and who executed the foregoing instrument and he acknowledged to me that he executed the same.

Notary Public

NEIL PATEL
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN KINGS COUNTY
REG. #01PA6155654
MY COMMISSION EXP. 11/13/20 22