## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DREYMOOR FERTILIZERS OVERSEAS
PTE. LTD. a Singapore entity,

*Plaintiff,*

vs.

Case No. 20-mc-0105-EFM-GEB

AVAGRO, LLC, a Kansas limited liability
company, and UAB AVAGRO, a Lithuanian
corporation,

*Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Dreymoor Fertilizers Overseas Pte. Ltd ("Dreymoor") filed this action to enforce an arbitration award against Defendants AVAgro, LLC ("LLC") and UAB AVAgro ("UAB") (collectively "AVAgro") (Doc. 1).  Dreymoor also filed a Motion for Judgment, an "Emergency Application for Order for Post Judgment Remedies" (Doc. 16).  In this motion, Dreymoor anticipatorily seeks to execute on the judgment from the confirmed award.  The Court held a hearing on May 13, 2020 regarding both motions.[1]  For the reasons stated below, the Court grants Dreymoor's motion to enforce the arbitration award.  In addition, the Court grants in part and denies in part Dreymoor's application for post-judgment remedies.

---

[1] The Court conducted a ZOOM hearing in which everyone attended by video.

## I.        Factual and Procedural Background

Plaintiff Dreymoor Fertilizers is a company registered, and with its principal place of business, in Singapore.  Defendant AVAgro, LLC is a Kansas limited liability company with its principal place of business in Kansas.  Defendant UAB AVAgro is a Lithuanian corporation.  UAB is wholly owned by LLC.  LLC is wholly owned by Anna Mikhailova who operates both entities from LLC's principal place of business in Kansas.

Plaintiff and Defendants are engaged in the business of trading fertilizer products.  On or about October 22, 2018, the parties entered into a Sales Contract.  A provision of the contract requires that any disputes between the parties be settled in arbitration.

A dispute arose between the parties.  UAB submitted a Notice of Arbitration against Dreymoor on January 31, 2019.  In March 2019, Dreymoor responded and asserted counterclaims against UAB.  Dreymoor also joined LLC as a party and asserted claims against it.

The arbitration proceeding occurred under the International Centre for Dispute Resolution, International Arbitration Rules and Procedures, and was administered by the American Arbitration Association.  An arbitrator was assigned, and an evidentiary hearing took place in New York City, New York in October 2019.  Each party was represented by counsel.

The arbitrator made the Final Award on February 15, 2020.  In the Final Award, the arbitrator awarded Dreymoor approximately $274,000 to be paid by Defendants within thirty days of the transmittal of the Final Award.  In addition, Defendants were ordered to pay approximately $65,000 in administrative fees and expenses related to the arbitration proceeding.  The Final Award also set out that after Dreymoor had been paid the monetary amount, Dreymoor was required to perform certain actions, such as notifying Unicredit Bank AG that it did not have title to the product and that UAB had title.

Defendants have not made payment to Dreymoor, and Dreymoor seeks to enforce the award in this Court.  Defendants oppose the enforcement of the arbitration award.  They also object to the remedies in executing the judgment that Dreymoor seeks.

## II.    Legal Standard

"The New York Convention is a multilateral treaty that governs foreign arbitral awards."[2]  It is enforced "through Article 2 of the Federal Arbitration Act (FAA), which incorporated it into federal law."[3]   "Under the New York Convention, a court must 'confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.' "[4]   The review of an arbitral award "is among the narrowest known to the law."[5]

## III.    Analysis

Defendants assert numerous reasons why the Court should not enforce the arbitral award.  The Court rejects each argument and will briefly address each in turn.

### A.    The New York Convention Applies

Defendants contend that the New York Convention does not apply.  Defendants, however, do not cite to any relevant case law supporting their proposition.  An arbitration award made in the United States that does not completely involve United States citizens is governed by the New York

---

[2] *Guang Dong Light Headgear Factory Co., Ltd. v. ACI Int'l, Inc.*, 2005 WL 1118130, at *3 (D. Kan. 2005) (citations omitted).

[3] *Id.* (citations omitted).

[4] *CEEG (Shanghai) Solar Sci. & Tech. Co. v. LUMOS LLC*, 829 F.3d 1201, 1206 (10th Cir. 2016) (citing 9 U.S.C. § 207)).

[5] *Id.* (citing *United Paperworkers Int'l Union, AFL-CIO v. Misco*, 484 U.S. 29, 36 (1987)).

Convention.[6]  Indeed, the Eleventh Circuit noted that the New York Convention applies "when [at least] one of the parties to the arbitration is domiciled or has its principal place of business outside of the United States."[7]  In addition, section 202 of the FAA provides that

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the [New York] Convention.  An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.  For purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.[8]

In this case, the arbitration involved three entities—two of which are located outside of the United States and one located within the United States.  Although the award was issued in New York, two of the parties are foreign entities.  Thus, the New York Convention governs the enforceability of the arbitration award.

**B.      The Agreement to Arbitrate and the Arbitral Award were Properly Submitted**

Defendants argue that Dreymoor cannot proceed in this Court because Dreymoor did not supply a proper arbitral award or agreement to arbitrate.  Article IV of the New York Convention provides that to obtain recognition and enforcement of an arbitration award, the party seeking enforcement must supply "(a) [t]he duly authenticated original award or a duly certified copy thereof; [and] (b) [t]he original agreement [to arbitrate] . . . or a duly certified copy thereof."[9]

---

[6] *See Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440-41 (11th Cir. 1998).

[7] *Id.* at 1441.

[8] 9 U.S.C. § 202.

[9] Convention, Art. IV(1)(a)-(b).

Dreymoor attached two documents to its Motion to Confirm and Enforce Arbitration Award.  First, Dreymoor attached a copy of the Sales Contract between the parties that contained the agreement to arbitrate.  Dreymoor also attached a copy of the Final Award from the arbitrator. Dreymoor's Director of Finance and Strategy, Suraj Aggarwal, averred that these documents were the ones that governed the dispute and were true and correct copies.  Defendants do not deny the existence of these documents nor that these documents are the correct documents that govern the dispute here.[10] Instead, Defendants take issue with the declaration from Aggarwal contending that Aggarwal's statement that the documents are true and correct "to the best of [his] knowledge and belief" indicates qualification about the truth of the matters asserted.   The Court rejects Defendants' "technicality" argument.   Thus, Dreymoor properly included certified copies of the agreement to arbitrate and the arbitral award.[11]

### C.    Personal Service upon LLC and UAB was Proper

Defendants next assert that Dreymoor did not serve the application to enforce the arbitration award properly because: (1) LLC was not served with a notice of hearing with the motion, and (2) UAB was not served by marshal or on a person authorized to receive service. Again, the Court rejects these technical arguments.  LLC had notice of the hearing as the Court set it for hearing, and LLC appeared for the hearing through counsel.  In addition, UAB was served through Anna Mikkhailova, UAB's representative and agent (as will be discussed in more detail below with regard to the exercise of personal jurisdiction).[12]  Furthermore, UAB is represented by

---

[10] The Court notes that UAB was the party who initially sought the arbitration.

[11] Plaintiff also included a declaration from its counsel who participated in the arbitration in New York averring that the arbitral award and agreement to arbitrate were true and correct copies.

[12] The Court also concludes that service by marshal is unnecessary based on the reasoning set forth in *LG Electronics Mobilecomm U.S.A., Inc. v. Reliance Commcn's, LLC*, 2018 WL 2059559, at *2-3 (S.D. Cal. 2018)

counsel and UAB's counsel (which is the same as LLC's counsel) and Mikkhailova attended the hearing on this matter.  Thus, the Court concludes that service was proper.

### D.      UAB is Subject to Personal Jurisdiction

Finally, Defendants contend that UAB is a Lithuanian entity and not subject to personal jurisdiction in Kansas.[13]  Dreymoor asserts that UAB is wholly owned by LLC (a Kansas entity), which is wholly owned by Mikkhailova.  It states that UAB, through LLC or Mikkhailova, operated in Kansas.

Kansas's long-arm statute is construed liberally, and the Court will proceed directly to the due process analysis.[14]  The due process analysis consists of two steps.  First, the Court must determine whether the defendant has "minimum contacts" with the forum state.[15]  To meet this minimum contacts standard, there must be either specific or general jurisdiction.[16]  The Court may exercise specific personal jurisdiction if the case arises directly from or relates to the defendant's Kansas-related activities.[17]  To exercise general jurisdiction, the Court may do so if the defendants maintain "continuous and systematic" contacts with Kansas.[18]  If the Court determines that the requisite minimum contacts exist, the Court must next ensure that the exercise of personal

---

(determining that service on a non-resident defendant pursuant to Fed. R. Civ. P. 4 satisfies the notice requirements under § 9 of the FAA).  Federal Rule of Civil Procedure 4(h)(1)(B) allows service on a foreign corporation by "delivering a copy of the summons and the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ."

[13] LLC does not contest personal jurisdiction over it.

[14] *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) (citation omitted).

[15] *Id.*

[16] *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090-91 (10th Cir. 1998).

[17] *Payless Shoesource, Inc. v. Shops at Hancock, LLC*, 2012 WL 1344977, at *2 (D. Kan. 2012).

[18] *Id.* (quoting *OMI Holdings, Inc.*, 149 F.3d at 1091).

jurisdiction over the defendant would not offend "traditional notions of fair play and substantial justice."[19]

Here, UAB (the Lithuanian entity) is wholly owned by LLC (a Kansas entity). Mikkhailova operates both entities from LLC's principal place of business in Wichita, Kansas. Mikkhailova is the principal manager and sole member of the LLC.  Although Mikkhailova asserts that her role is limited in UAB, Dreymoor's representative states that Mikkhailova was the only individual involved in the business transactions on behalf of both LLC and UAB.  Specifically, Mikkhailova was involved in the sales contract at issue here.  Indeed, Dreymoor's President averred that he met Mikkhailova several times in Wichita, Kansas when discussing the repayment plans.  Furthermore, Mikkhailova personally guaranteed UAB's debt through LLC.  There is no evidence that other individuals acted on behalf of UAB in its business transactions or specifically this sales contract. Thus, it appears that UAB had sufficient contacts with Kansas to satisfy the minimum contacts requirement, and both general and specific jurisdiction exists here.

As to the notion of fair play and substantial justice, the Court notes that UAB is the entity that initially sought arbitration with Dreymoor over disputes.  Dreymoor then joined LCC as a party and asserted additional claims.  Now that the arbitrator has determined that Defendants (UAB and LLC) are liable to Dreymoor, UAB is attempting to avoid that obligation by arguing that the Court lacks jurisdiction over it to enforce the obligation.  UAB participated in the negotiations for the contract (that included the arbitration clause) from Kansas through Mikkhailova.  UAB then brought the arbitration action.  Fair play and substantial justice support the exercise of personal jurisdiction over UAB to enforce the arbitration award, although the award is against UAB.

---

[19] *Marcus Food*, 671 F.3d at 1167 (citations omitted).

In sum, the Court grants Dreymoor's Motion to Enforce the Arbitration Award as there is no basis for which to deny Dreymoor's request.

### E.        Application for Order for Post Judgment Remedies

Dreymoor requests that the Court enter an "emergency" order for execution on judgment of the Arbitration Award.  Dreymoor specifically requests transfer to it: (1) AVAgro's right, title and interest in 27,464.55 tons of UAN fertilizer being held in a storage facility, (2) the shares of UAB held by LLC, and (3) the claims of LLC, held by LLC and UAB, against Klasco that are subject to an action in Lithuania.  The Court declines to grant these requests.

Instead, the Court orders that LLC and UAB shall disclose to Dreymoor, within 5 days of the date of this Order, all assets owned by them, directly or indirectly, of record or beneficially, in whole or in part (collectively, the "Assets").  Dreymoor shall further be entitled to conduct an examination under oath of the owner of LLC (which itself owns UAB) regarding the Assets.  Such examination must occur no later than 14 days after requested by Dreymoor.  LLC and UAB are immediately enjoined from selling, transferring, pledging or otherwise encumbering or disposing of any Assets unless and until the amount due Dreymoor on the judgment in this matter, including interest thereon, has been paid in full.  Dreymoor shall further be fully entitled to pursue all other remedies provided by law in the collection of such judgment.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Enforce the Arbitration Award (Doc. 1) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Emergency Application for Order for Post Judgment Remedies (Doc. 16) is **DENIED IN PART** and **GRANTED IN PART**.  Plaintiff's specific requests are denied, but the Court grants certain post-judgment remedies, as specified in detail above.

**IT IS SO ORDERED**.

Dated this 22nd day of May, 2020.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE